**MATERN LAW GROUP, PC**
Matthew J. Matern (SBN 159798)
Email: mmatern@maternlawgroup.com
Joshua D. Boxer (SBN 226712)
Email: jboxer@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile:  (310) 531-1901

**MATERN LAW GROUP, PC**
Sara B. Tosdal (SBN 280322)
Email: stosdal@maternlawgroup.com
1330 Broadway, Suite 436
Oakland, California 94612
Telephone: (510) 227-3998
Facsimile:  (310) 531-1901

Attorneys for PLAINTIFFS
JULIE SAMORA and TIANA BEARD,
individually and on behalf of others similarly
situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE SAMORA and TIANA BEARD, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHASE DENNIS EMERGENCY MEDICAL GROUP, INC., a California Corporation; TEAM HEALTH HOLDINGS, INC., a Delaware corporation; and DOES 1 through 50,<br><br>Defendants. | Case No. 5:20-cv-02027-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SUPPLEMENTAL CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        August 3, 2023<br>Time:        9:00 a.m.<br>Courtroom:   3 – 5th Floor<br><br>Action Filed: February 7, 2020<br>Removal Filed: March 23, 2020<br>FAC Filed: April 20, 2020<br>SAC Filed: November 16, 2021 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 3, 2023 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California, Plaintiffs Julie Samora and Tiana Beard (collectively, "Plaintiffs") will, and hereby do, move this Court for an order granting final approval of a supplemental class action settlement in the above-captioned matter.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move for entry of an order:

1.      Granting final approval of the terms of the proposed supplemental class action settlement described in the Addendum to Joint Stipulation of Class Action Settlement and Release of Claims ("Addendum") as fair, reasonable, and adequate to all Omitted Class Members;

2.      Finding that the Supplemental Notice of Class Action Settlement distributed to the Class Members pursuant to the Court's order granting preliminary approval constituted the best practicable notice to all Omitted Class Members under the circumstances;

3.      Finally certifying the class for settlement purposes only;

4.      Directing that compensation to all Omitted Class Members be disbursed pursuant to the terms of the Addendum;

5.      Directing Defendants to pay the $3,829,14.10 Supplemental Gross Settlement amount, which shall include:

(a) An award of reasonable attorneys' fees in the amount of $1,072,161.75 to Class Counsel, which is 28% of the Supplemental Gross Settlement;

(b) Supplemental Settlement Administration costs in the amount of $6,000.00;

(c) Payment to the California Labor Workforce Development Agency ("LWDA") in the amount of $188,233.06, and to the Aggrieved Employees in the amount of $62,744.35, for a total of $250,977.42 in civil penalties pursuant to the Private Attorneys General Act of 2004 ("PAGA") (the

1    "Supplemental LWDA Payment"); and

2    (d) Supplemental Individual Settlement Payments to each participating Omitted

3    Class Member.

4    6.    Directing Defendants to separately pay their share of payroll taxes in addition to

5    the Supplemental Gross Settlement Amount.

6    7.    Entering final judgment in the action.

7    This Motion is based on this Notice, the attached Memorandum of Points and

8    Authorities, the accompanying declarations of Joshua D. Boxer and Jarrod Salinas of Phoenix

9    Class Action Administration Solutions, and any exhibits thereto, the complete files and records

10   of this case, the Stipulation, and any other evidence or oral argument which may be considered

11   by the Court at the time of the hearing.

12

13   DATED: June 29, 2023        **MATERN LAW GROUP, PC**

14

15   By:   /s/ Sara B. Tosdal
                Sara B. Tosdal
16              Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT BACKGROUND ............................................................................ 2

        A.      The Parties.............................................................................................. 2

        B.      Relevant Procedural History .................................................................. 2

        C.      Initial Settlement and Preliminary and Final Approval ......................... 3

        D.      The Supplemental Settlement ................................................................. 4

III.    THE PROPOSED SUPPLEMENTAL SETTLEMENT...................................... 5

        A.      The Omitted Class Members................................................................... 5

        B.      Supplemental Settlement Terms ............................................................. 5

                1.      Supplemental Individual Settlement Payments........................... 6

                2.      Attorneys' Fees. ......................................................................... 6

                3.      Supplemental LWDA Payment.................................................... 6

                4.      Wages to Non-Wages Ratio…..................................................... 7

                5.      Settlement Administration Costs................................................. 7

        C.      Release ................................................................................................... 7

        D.      Supplemental Class Notice and Settlement Administration ................... 8

IV.     CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE
        REQUIREMENTS OF DUE PROCESS AND RULE 23 .................................... 9

V.      THE PROPOSED SUPPLEMENTAL SETTLEMENT MERITS FINAL APPROVAL. 11

        A.      The Proposed Supplemental Settlement Is Presumed To Be Fair.......... 12

        B.      Relevant Criteria Support Final Approval of the Supplemental Settlement.......... 14

                1.      Plaintiffs and Class Counsel Have Adequately Represented the Class. .... 14

                2.      The Settlement Was Negotiated at Arm's Length. .................... 15

                3.      The Relief Provided to the Class Is Adequate. ......................... 16

                4.      The Supplemental Settlement Does Not Provide Preferential
                        Treatment to Plaintiffs or Any Segment of the Class. .............. 21

MOTION FOR FINAL APPROVAL
CASE NO. 5:20-cv-02027-BLF

        5.     Class Members' Reaction to the Proposed Supplemental Settlement. ...... 22

   C.     The Proposed PAGA Allocation Is Fair and Reasonable ...................................... 22

VI.     CONCLUSION ........................................................................................................... 25

1

<b><u>TABLE OF AUTHORITIES</u></b>

2

3

<b>Page(s)</b>

<u>**Federal Cases**</u>

4

5

*Alcala v. Meyer Logistics, Inc.*,
   Case No. CV 17-7211 PSG (AGRx), 2019 WL 4452961 (C.D. Cal. June 17, 2019)..............24

6

7

*Burns v. Elrod*,
   757 F.2d 151 (7th Cir. 1985)...................................................................................10

8

9

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)..................................................................................10

10

11

*Craft v. Cnty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008)...................................................................19

12

13

*Deaver v. Compass Bank*,
   Case No. 13-cv-00222-JSC, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ...........15

14

*Echavez v. Abercrombie & Fitch Co.*,
   No. CV 11-09754-GAF, 2017 WL 3669607 (C.D. Cal. Mar. 23, 2017) .................24

15

16

*Espinosa v. Cal. Coll. of San Diego, Inc.*,
   Case No. 17cv744-MMA (BLM), 2018 WL 1705955 (S.D. Cal. April 9, 2018)....19

17

18

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
   253 F. Supp. 3d 1074 (C.D. Cal. 2017)..................................................................23

19

20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................................12, 13, 19

21

22

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)..........12, 13, 15

23

24

*Hopson v. Hanesbrands, Inc.*,
   No. CV-08-0844 EDL, 2008 WL 3385452 (S.D. Cal. Apr. 13, 2009) ...................24

25

*In re M.L. Stern Overtime Litig.*,
   No. 07-CV-0118-BTM (JMA), 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) .........24

26

27

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)..............................................................................12, 15

28

//

v

*In re Synocor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................. 12

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) .............................................................. 12

*Jordan v. NCI Grp., Inc.*,
  No. EDCV161701JVSSPX, 2018 WL 1409590 (C.D. Cal. Jan. 5, 2018) ............... 24

*McKenzie v. Fed. Express Corp.*,
  765 F. Supp. 2d 1222 (C.D. Cal. 2011) ...................................................... 23

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ................................................................... 22

*Moniz v. Adecco USA, Inc.*
  2021 WL 5578298 (Cal. Ct. App. Nov. 30, 2021) ......................................... 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 14, 22

*O'Connor v. Uber Technologies, Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016) ...................................................... 23

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................................... 12

*Ramirez v. Benito Valley Farms, LLC*,
  No. 16-CV-04708-LHK, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) ............... 23

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................... 18

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................... 15

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ............................................................................. 20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................... 11, 12, 14

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016) ................................................................. 19

//

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. Aug. 15, 1995) ............................................................................ 21

*Visceral v. Mistral Grp., Inc.*,
  Case No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .......................... 22

*Young v. Polo Retail, LLC*,
  No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. March 28, 2007) .................................... 14

*Zamora Jordan v. Nationstar Mortg., LLC*,
  NO. 2:14-CV-0175-TOR, 2019 WL 1966112 (E.D. Wash. May 2, 2019) .............................. 19

**State Cases**

*Dunk v. Ford Motor Co.*,
  48 Cal. App. 4th 1794 (1996) ................................................................................................. 20

*Huff v. Securitas Sec. Servs., USA, Inc.*,
  23 Cal. App. 5th 745 (2018) ................................................................................................... 23

*Iskanian v. CLS Transp. L.A., LLC*,
  59 Cal. 4th 348 (2014) ..................................................................................................... 22, 23

*Nightengale v. Hyundai Motors Am.*,
  31 Cal. App. 4th 99 (1994) ..................................................................................................... 20

*Ramos v. Countrywide Home Loans, Inc.*,
  82 Cal. App. 4th 615 (2000) ................................................................................................... 20

*Thurgood v. Bayshore Transit Mgmt., Inc.*,
  203 Cal. App. 4th 1112 (2012) ............................................................................................... 22

*Wershba v. Apple Computer, Inc.*,
  91 Cal. App. 4th 224 (2001) ................................................................................................... 20

**Statutes**

Cal. Lab. Code § 2699(2) (West 2023) ....................................................................................... 22

//

//

//

//

Rules

Fed. R. Civ. P. 23 .................................................................................................. 2, 3
Fed. R. Civ. P. 23(c)(2)(B).......................................................................................... 10
Fed. R. Civ. P. 23(e)................................................................................................... 11
Fed. R. Civ. P. 23(e)(1)................................................................................................ 9
Fed. R. Civ. P. 23(e)(2).............................................................................................. 14
Fed. R. Civ. P. 23(e)(2)(C)......................................................................................... 11
Rule 23(c)(3) ............................................................................................................. 10

Other Authorities

*Newberg on Class Actions* § 15:83 .......................................................................... 19

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On April 13, 2023, this Court granted preliminary approval of the proposed supplemental class-action settlement ("Supplemental Settlement") between Plaintiffs Julie Samora and Tiana Beard (collectively, "Plaintiffs") and Defendants Chase Dennis Emergency Medical Group, Inc. ("Chase Dennis") and Team Health Holdings, Inc. ("Team Health") (collectively, "Defendants"). Dkt. No. 96. Plaintiffs now seek an order granting final approval of the proposed Supplemental Settlement as memorialized in the Addendum to Joint Stipulation of Class Action Settlement and Release of Claims ("Addendum").

If finally approved, the Supplemental Settlement will create an all-inclusive settlement fund in the gross amount of $3,829,149.10. The proposed Supplemental Settlement will dispose of this action in its entirety as to the following class:

> All current and former non-exempt, hourly employees of Defendants in California at any time between February 7, 2016 to February 22, 2022.

Moreover, the proposed Supplemental Settlement provides substantial benefits to Class Members who were inadvertently omitted from the initial Settlement in this matter ("Omitted Class Members"), which the Court previously approved on July 29, 2022. This Supplemental Settlement ensures that the Omitted Class Members receive the same gross per-workweek distribution as the Participating Class Members in the original Settlement. The Supplemental Settlement is non-reversionary as to distributions to be made to the Omitted Class Members.

The proposed Supplemental Settlement is also fair, adequate, and reasonable. The Supplemental Settlement provides substantial benefits to the Omitted Class Members when balanced with the strength of Plaintiffs' case and the risks and expense of further litigation. In addition, the Omitted Class Members' reaction to the Settlement has been overwhelmingly positive, as, to date, there have been no objections to the Settlement, and no requests for exclusion.[1] Additionally, the proposed Supplemental Settlement was reached through arms-

---

[1] The deadline is July 6, 2023. *See* Declaration of Jarrod Salinas ("Salinas Decl.") ¶¶ 12-14.

MOTION FOR FINAL APPROVAL
CASE NO. 5:20-cv-02027-BLF

length negotiations with sufficient investigation and discovery that allowed Class Counsel to act intelligently in litigating the case and reaching the Settlement. Additionally, Class Counsel supports the proposed Supplemental Settlement as being in the best interests of the Omitted Class Members. Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Final Approval of Supplemental Class Action Settlement.

## II.    RELEVANT BACKGROUND

### A.    <u>The Parties</u>

Chase Dennis is a wholly owned subsidiary of Team Health. During the Class Period, Defendants employed approximately 1,676[2] hourly, non-exempt employees in California. Defendants employed Plaintiff Samora as a Physician's Assistant, an hourly, non-exempt position, in Santa Clara County from January 2018 through March 2019. Declaration of Joshua D. Boxer ("Boxer Decl.") ¶ 4. Defendants employed Plaintiff Tiana Beard as an hourly non-exempt employee in West Hills and North Hollywood from February 2016 to February 2020. *Id.*

### B.    <u>Relevant Procedural History</u>

Plaintiff Samora filed this action in Santa Clara Superior Court on February 7, 2020, alleging causes of action for: to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide required meal periods; (4) failure to provide required rest periods; (5) failure to indemnify employees for necessary expenditures incurred in discharge of duties; (6) failure to maintain required records; (7) failure to furnish accurate itemized wage statements; (8) failure to timely pay wages during employment; (9) failure to pay all wages due to discharged and quitting employees; (10) unfair and unlawful business practices; and (11) enforcement action pursuant to the Private Attorneys General Act of 2004 ("PAGA"). Dkt. No. 1-1.

On March 23, 2020, Defendants then removed this action to the District Court for the Northern District of California based on CAFA. Dkt. No. 1.

---

[2] This includes 1,255 who received the initial Class Notice and 421 who Defendants inadvertently omitted from the settlement. Ten opted out of the initial settlement. Boxer Decl. ¶ 5.

On March 30, 2020, Defendants filed a Motion to Dismiss. Dkt. No. 6.

On April 10, 2020, the Parties stipulated to the filing of a First Amended Complaint and Defendants withdrew the Motion to Dismiss. Dkt. No. 19. Plaintiff filed a First Amended Complaint ("FAC") in accordance with the Stipulated Order on April 20, 2020. Dkt. No. 21. Defendants answered the FAC on May 18, 2020. Dkt. No. 24.

In the course of discovery and investigation, on October 20, 2021, Plaintiff sought leave to file a Second Amended Complaint ("SAC") to add Plaintiff Beard as a named plaintiff, which Defendants opposed. Dkt. Nos. 59, 62. The Court granted Plaintiff's motion, and on November 16, 2021, Plaintiff filed the SAC. Dkts. No. 67, 68. Defendants answered the SAC on November 30, 2021. Dkt. No. 69.

### C.    Initial Settlement and Preliminary and Final Approval

Following extensive discovery, investigation, and protracted negotiations, on or around November 24, 2021, the Parties entered into a memorandum of understanding ("MOU") to resolve the matter. Boxer Decl. ¶¶ 7-12. The Parties fully executed that long-form settlement agreement on or about January 18, 2022. Boxer Decl. ¶ 13. Plaintiffs moved for preliminary approval on January 21, 2022. *Id*. The Court granted preliminary approval on March 17, 2022. *Id*.; *see also* Dkt. No. 77. After the notice and opt-out process, the Court granted final approval to the certified (for settlement purposes) class on July 29, 2022. *Id.*; *see also* Dkt. No. 84.

The final approval order and judgment covered 1,245 Class Members who had not requested exclusion from the settlement. Boxer Decl. ¶ 13. As part of final approval, the Court also awarded Plaintiffs Class Representative Service Awards, named Plaintiffs' Counsel as Class Counsel, awarded Class Counsel fees in the amount of $1,372,000 (or 28% of the Gross Settlement Amount), plus $60,000 in attorneys' costs, and awarded $11,000 in administration costs for Phoenix Class Action Administration Solutions ("Phoenix" or "Settlement Administrator"). Dkt. No. 84, at pp. 4-5; *see also* Dkt. No. 83, at p. 2. The Court set a deadline of 30 days after disbursement for the Parties to report on the status of the settlement disbursements.

Additionally, on July 29, 2022, the Court entered a final judgment in the matter. Dkt. No. 85. That judgment set forth the same terms as the final approval order, described above, and also entered final judgment of the action with respect to "All persons who were employed in hourly, non-exempt positions at Defendants' facilities in the State of California at any time during the time period from February 7, 2016 through February 22, 2022." Dkt. No. 85, at ¶¶ 8, 18, 20-22.

### D. The Supplemental Settlement

Following the disbursement of funds to Class Members on October 21, 2022, counsel for the Parties independently learned that numerous hourly, non-exempt employees who worked for Defendants during the applicable Class Period had been inadvertently omitted by Defendants from the original Settlement Class (the Omitted Class Members). On researching the matter, Defendants and their counsel determined that a sorting error had occurred in identifying Settlement Class Members—in other words, hourly, non-exempt employees of Defendants in the State of California between February 7, 2016 and February 22, 2022—that resulted in Defendants inadvertently omitting otherwise qualifying employees. Boxer Decl. ¶ 20; *see also* Dkt. No. 86. The Parties reported the matter to the Court in a November 21, 2022 status report, and requested that the judgment be stayed as to the hourly, non-exempt employees affected by the data-sorting error. Boxer Decl. ¶ 20; Dkt. No. 86. On November 22, 2022, the Court ordered the final judgment stayed as to the affected individuals, re-opened the case, and set a status conference for the Parties to discuss with the Court. Boxer Decl. ¶¶ 21-22; Dkt. Nos. 86, 87.

At the December 8, 2022, Status Conference, the Parties and the Court discussed next steps in terms of determining the affected employees and the amount to be paid to make those employees whole, and conducting a supplemental notice and opt-out period for those affected employees. Boxer Decl. ¶ 22. The Parties, by and through their counsel, then proceeded to engage in extensive discussions and negotiations on determining the amount to be paid in order to make the Omitted Class Members whole, and place them in the same footing as the original Settlement Class Members. *Id.* ¶¶ 22-24. After a further conference with the Court on February 24, 2023 to

assist the Parties with reaching a resolution on this, the Parties reached an agreement on March 29, 2023. *Id.* The Parties memorialized the agreement in the Addendum. *Id.* ¶ 22 & Ex. 1.

Plaintiffs moved for preliminary approval of the Supplemental Settlement, as set forth in the Addendum, on March 30, 2023. *Id.* ¶ 21; *see also* Dkt. No. 93. On April 13, 2023, the Court granted preliminary approval of the Supplemental Settlement and the notice and opt-out process. Boxer Decl. ¶ 22; *see also* Dkt. No. 96.

### III. THE PROPOSED SUPPLEMENTAL SETTLEMENT

#### A. <u>The Omitted Class Members</u>

The proposed Supplemental Class, referred to herein as Omitted Class Members, consists of all persons who are or have been employed by Defendant as hourly, non-exempt employees in the State of California at any time during the time period from February 7, 2016 through February 22, 2022 ("Class Period") and who were inadvertently omitted from the initial settlement of this matter. Addendum ¶ 1.2. According to Defendant's records, there are 421 Omitted Class Members. *Id.*; Salinas Decl. ¶ 4; Boxer Decl., ¶¶ 5-6.

#### B. <u>Supplemental Settlement Terms</u>

Under the proposed Supplemental Settlement, the claims of all Omitted Class Members shall be settled for the Supplemental Gross Settlement Amount of Three Million Eight Hundred Twenty-Nine Thousand One Hundred Forty-Nine Dollars and Ten Cents (**$3,829,149.10**), which shall be inclusive of all Supplemental Individual Settlement Payments, attorneys' fees, the Settlement Administration costs, and the LWDA Payment. Addendum ¶ 1.3. The employer's share of payroll taxes shall be separately paid by Defendants in addition to the Supplemental Gross Settlement Amount. *Id.* Unlike most common fund settlements, the allocations reflected in the Addendum were designed to match the amounts received by the initial settlement class members. As a result, the Addendum does include a reversion to Defendant of any amount of attorneys' fees not awarded to Class Counsel. *See id.* ¶ 1.3, 1.6.

//

Subject to Court approval, the Supplemental Gross Settlement Amount shall be allocated as follows:

1.    <u>Supplemental Individual Settlement Payments</u>. All Omitted Class Members shall be eligible to receive a share of the Supplemental Net Settlement Amount, which equals the Supplemental Gross Settlement Amount, less Attorneys' Fees, Settlement Administration Costs, and the Supplemental LWDA Payment. *Id.* ¶¶ 5.6, 5.61. The Supplemental Net Settlement Amount shall be distributed to Omitted Class Members on a pro rata basis according to the total number of weeks worked during the Class Period. *Id.* ¶ 5.6.1.[3]

2.    <u>Attorneys' Fees</u>. Class Counsel may seek an award of attorneys' fees in an amount not to exceed twenty-eight percent (28%) of the Supplemental Gross Settlement Amount, which equals One Million Seventy-Two Thousand One Hundred Sixty-One Dollars and Seventy-Five Cents ($1,072,161.75). This is the same percentage the Court previously awarded to Counsel for their work leading up to the earlier Settlement. *Id.* ¶ 7.4; *see also* Dkt. No. 84.

3.    <u>Supplemental LWDA Payment</u>. Subject to Court approval, Two Hundred Fifty Thousand Nine Hundred Seventy-Seven Dollars and Forty-Two Cents ($250,977.42) from the Supplemental Gross Settlement Amount will be allocated as penalties under PAGA, of which 75%, or One Hundred Eighty-Eight Thousand Two Hundred Thirty-Three Dollars and Six Cents ($188,233.06), will be paid to the LWDA. *Id.* ¶¶ 1.5, 5.5. The remaining 25%, or Sixty-Two Thousand Seven Hundred Forty-Four Dollars and Thirty-Five Cents ($62,744.35), shall be distributed to the Aggrieved Employees as part of their Supplemental Individual Settlement

---

[3] Supplemental Individual Settlement Payment checks will remain negotiable for 180 days from the date of issuance.  Addendum ¶ 5.9.2. If a Supplemental Individual Settlement Payment check remains uncashed after 180 days from issuance, the Settlement Administrator shall pay over the amount represented by the check to the State Controller's Office Unclaimed Property Fund, with the identity of the Class Member to whom the funds belong. *Id.*

Payments regardless of whether they opt out of the Class portion of the Supplemental Settlement. Addendum ¶ 5.6.

4.     <u>Wages to Non-Wages Ratio</u>. Under the initial Settlement, the Class portion of the Settlement was characterized as 80% Form 1099 income and 20% Form W-2 income, to reflect that 80% of the payment would account for penalties and interest, while 20% would account for unpaid wages. Boxer Decl. ¶ 24. Here, because the Parties agreed that the portion allocated to PAGA would be *reduced* and the portion allocated to Class payments would be *increased* in this Supplemental Settlement, the Parties needed to make sure that this did not prejudice the Omitted Class Members by exposing them to potentially greater tax consequences. *Id*. As a result, the Parties agreed to a slightly different ratio of wages to non-wages here, with 80.7% of the class portion being allocated to wages and 19.3% allocated to non-wages. With this adjustment, Omitted Class Members and initial Class Members will have the same ratio of wages to non-wages when considering the total blended (Class and PAGA) amount. *Id*.

5.     <u>Settlement Administration Costs</u>. Subject to Court approval, the Settlement Administration Costs, which are estimated not to exceed Six Thousand Dollars ($6,000.00),[4] shall be paid from the Supplemental Gross Settlement Amount. Addendum ¶ 3.1; Salinas Decl. ¶ 16.

**C.     <u>Release</u>**

On entry of the Supplemental Final Approval Order and judgment, all Omitted Class Members who do not exclude themselves from the Supplemental Settlement shall be deemed to have fully released the Released Parties from any and all claims, wages, penalties, interest, debts, demands, rights, liabilities, costs, compensation, damages, attorneys' fees, actions, and/or causes

---

[4] The $6,000 assumes that only one taxing entity is involved in the disbursement. However, administrative costs increase by $500 per taxing entity. The Settlement Administration costs do not affect the calculation of Supplemental Individual Settlement Payments or amounts distributed to the Omitted Class Members.

MOTION FOR FINAL APPROVAL
CASE NO. 5:20-cv-02027-BLF

of action that were pleaded or could have been pleaded based upon the factual allegations set forth by Plaintiffs in the operative Second Amended Complaint and arising at any time during the Class Period, including any and all claims for and/or related to the causes of action plead for alleged: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Required Meal Periods; (4) Failure to Provide Required Rest Periods; (5) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (6) Failure to Maintain Required Records; (7) Failure to Furnish Accurate Itemized Wage Statements; (8) Failure to Timely Pay Wages During Employment; (9) Failure to Pay All Wages Due to Discharged and Quitting Employees; (10) Unfair and Unlawful Business Practices; and (11) Enforcement Action Pursuant to the Private Attorneys General Act of 2004. Addendum ¶ 6.1. Upon the Effective Date, all Omitted Class Members shall be deemed to have released the Released Parties of any and all claims and/or causes of action under PAGA which are based upon the factual allegations set forth in the operative complaint and arising at any time during the PAGA Period. *Id*.

### D.    Supplemental Class Notice and Settlement Administration

The Supplemental Settlement will be administered in the same manner as the Settlement this Court previously approved. Specifically, within fourteen (14) days of receiving this Supplemental Class Information, the Settlement Administrator shall perform a search based on the National Change of Address Database maintained by the United States Postal Service to update and correct any known or identifiable address changes. Addendum ¶ 3.2. Within fourteen (14) days after receiving the Supplemental Class Information from Defendant, the Settlement Administrator shall mail copies of the Supplemental Notice Packet to all Omitted Class Members via regular First Class U.S. Mail. *Id*. The address identified by the Settlement Administrator as the current mailing address shall be presumed to be the most current mailing address for each Omitted Class Member. *Id*. Omitted Class Members will have the opportunity, should they

//

MOTION FOR FINAL APPROVAL
CASE NO. 5:20-cv-02027-BLF

disagree with the number of Weeks Worked stated on the Supplemental Class Notice, to provide documentation and/or an explanation to show contrary information. *Id.* ¶ 5.6.2.

Omitted Class Members who wish to exclude themselves from the class and Supplemental Settlement must submit a Request for Exclusion. Addendum ¶ 4.2.1. The Request for Exclusion must: (1) state the name, including any former names used while employed by Defendants, current address, and current telephone number of the Omitted Class Member requesting exclusion; (2) contain a statement that the Omitted Class Member is requesting to opt out of, or be excluded from, the Settlement; (3) be signed by the Omitted Class Member; and (4) be postmarked by forty-five (45) days after the postmark of the Supplemental Class Notice and returned to the Settlement Administrator at the specified address. Addendum ¶ 4.2.1. The Request for Exclusion must be in substantially the same form as Exhibit B to the Addendum. *Id.*

Omitted Class Members may also submit an Objection. *Id.* ¶ 4.3. The Objection must contain (1) the name and case number of this lawsuit, *Samora v. Chase Dennis Emergency Medical Group, Inc., et al.*, United States District Court for the Northern District of California, Case No. 5:20-cv-02027-BLF; (2) the full name, last four digits of their Social Security Number, and current address of the Omitted Class Member making the Objection; (3) the specific reason(s) for the Objection; and (4) any and all evidence and supporting papers (including, without limitation, all briefs, written evidence, and declarations) for the Court to consider; and (5) be postmarked by 45 days after the postmark date of mailing of the Supplemental Notice Packet and returned to the Settlement Administrator at the specified address. *Id.* ¶ 4.3.1.

## IV.    CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE REQUIREMENTS OF DUE PROCESS AND RULE 23

Before the Court may grant final approval of a proposed class-action settlement, adequate notice of the settlement must be provided to the class members. Fed. R. Civ. P. 23(e)(1). Class members should be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B). The notice may be by United States mail or other appropriate means. *Id.* The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to class members who can be identified by regular mail. *See, e.g.*, *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

For a class certified under Rule 23(b)(3), class notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations and quotations omitted).

The Settlement Administrator has implemented the supplemental notice plan, as preliminarily approved by the Court on April 13, 2023. *See* Addendum, ¶ 3.1 to 4.5.; *see also* Dkt. No. 96; Salinas Decl. ¶¶ 5-14. On or about November 18, 2022, the Settlement Administrator received from Defendants a list containing each Omitted Class Member's full name, last known address, Social Security number, and number of weeks worked (collectively, "Class Information"). Salinas Decl. ¶ 4, 7. The Settlement Administrator received Class Information for 421 Omitted Class Members. *Id.* ¶ 4. After receiving the Class Information and following preliminary approval of the Supplemental Settlement, on May 22, 2023, the Settlement Administrator performed a search on National Change of Address database and updated Omitted Class Member contact information accordingly. *See id.* ¶¶ 5-8. On May 22,

//

2023, the Supplemental Notice Packets[5] were mailed to the Omitted Class Members by first-class U.S. mail, with pre-paid postage. *Id.* ¶ 9.

The deadline for opting out, objecting, or disputing the calculated workweeks is July 6, 2023. *See id.* ¶¶ 12-14. Omitted Class Members were provided an opportunity to present information to the Settlement Administrator to the extent they had any dispute about the calculation of workweeks. Addendum, ¶ 5.6.2.

As of the date of this Motion, zero Supplemental Notice Packets were returned as undeliverable without a forwarding address. Salinas Decl. ¶¶ 10-11. Further, as of the date of this Motion, zero Omitted Class Members have opted out of, objected to, or disputed the Supplemental Settlement. *Id.* ¶¶ 12-14.

In short, the supplemental notice procedures undertaken by the Settlement Administrator constitute the best notice practicable under the circumstances, and fully comply with Rule 23 and the requirements of due process.

## V. THE PROPOSED SUPPLEMENTAL SETTLEMENT MERITS FINAL APPROVAL

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e). In determining whether to grant final approval, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2)(C); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). To assess the merits of a final settlement in a class action, courts "balance a number of factors," including:

> [T]he strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

---

[5] Notice Packets include the Court-approved Supplemental Notice of Class Action Settlement and Change of Address Form. *See* Addendum, ¶ 1.1; *see also* Salinas Decl. ¶ 9, Ex. A.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton*, 327 F.3d at 959; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court considers the "settlement taken as a whole." *See Hanlon*, 150 F.3d at 1026.

Although the Court has broad discretion in making a final determination that a class-action settlement is fair, the Court's discretion is "limited to the extent necessary to reach a reasoned judgment that the [settlement] is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. A presumption of fairness exists where "the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). The Ninth Circuit has recognized "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008). In the end, "[s]ettlement is the offspring of compromise; the question [that the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate[,] and free from collusion." *Hanlon*, 150 F.3d at 1027.

### A.     The Proposed Supplemental Settlement Is Presumed To Be Fair.

The Court should begin with a presumption that the proposed Supplemental Settlement is fair and should be approved. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see Harris*, 2011 WL 1627973, at *8 ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). Courts find that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).

Here, the parties negotiated the proposed Supplemental Settlement at arm's length. This was done following the protracted negotiations of the initial Settlement, which began in a November 15, 2021 mediation with Lisa Klerman, an experienced wage-and-hour mediator.

Boxer Decl. ¶ 12. The Parties were able to make an informed decision regarding the Supplemental Settlement based on their experience in prior negotiations and in litigating the case to that initial Settlement, as well as based on their knowledge of the initial settlement distribution and Defendants' records of the weeks worked and the number of Omitted Class Members. Furthermore, during the course of the litigation, Plaintiffs conducted significant discovery and investigation prior to resolution. Discovery included propounding and responding to multiple sets of written discovery, reviewing ten thousand pages of documents, interviewing original Class Members, defending Plaintiffs' depositions, and taking the deposition of Defendants' corporate designee. *Id.* ¶¶ 7-10. Prior to the mediation that resulted in the initial settlement, Plaintiffs and their retained experts also prepared a damages model based on information and data from Defendants and original Class Members. *Id.* ¶ 11.

Following the distribution of the original settlement, Class Counsel engaged in extensive discussions with Defendants' counsel regarding the Omitted Class Members, as well as with the Settlement Administrator, on how to make the Omitted Class Members whole from their exclusion in the initial settlement. Based on the information and record developed through extensive investigation and discovery in the case, Class Counsel was able to act intelligently and effectively in negotiating the proposed Supplemental Settlement. *Id.* ¶¶ 7-11, 14, 23. These circumstances are the antithesis of collusion and show that the settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial.

Plaintiffs and their counsel were able to make an informed decision regarding settlement, as Plaintiffs conducted significant discovery and investigation prior to the mediation that resulted in the initial settlement. Significant factual investigation and discovery allowed Class Counsel— who is experienced in wage-and-hour class-action litigation—to assess the strengths and weaknesses of the claims against Defendants and the benefit of the proposed Supplemental Settlement. *Id.* ¶¶ 7-11, 14-26. During the course of the litigation, Class Counsel and their retained experts reviewed over ten thousand pages of documents produced by Defendants, including relevant wage-and-hour policy documents and time and pay records; interviewed Class Members; defended Plaintiffs' depositions; took the deposition of Defendants' corporate

designee; obtained a sampling of timekeeping and payroll records; and prepared a damages model based on expert analysis of the time and payroll data and information obtained from Defendants. *Id.* ¶¶ 7-11, 14. Prior to mediation, Plaintiffs and their retained experts also prepared a damages model which was based on information and data obtained from Defendants and Class Members. *Id.* ¶ 11. Plaintiff and Class Counsel therefore had adequate information to gauge the value of the Settlement Class Members' claims and assess whether the proposed Supplemental Settlement is fair, adequate, and reasonable. As discussed further below, Class Counsel supports the Supplemental Settlement because it achieves a significant result for the Omitted Class Members and the Class, particularly in light of the risks of continued litigation.

## B.    Relevant Criteria Support Final Approval of the Supplemental Settlement.

In deciding whether to grant final approval of a class-action settlement, courts must determine whether it is "fair, reasonable, and adequate" after considering whether "(a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors are not exhaustive, however, and should be tailored to each case. *Staton*, 327 F.3d at 959; *see* Fed. R. Civ. P. 23(e)(2) 2018 advisory committee's note ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). The relevant criteria support final approval of the proposed Supplemental Settlement here.

### 1.    Plaintiffs and Class Counsel Have Adequately Represented the Class.

Final approval is warranted because Plaintiffs and Class Counsel conducted an adequate investigation and discovery prior to reaching a settlement. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The greater the amount of discovery that has been completed, the more the parties have 'a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C-02-

4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. March 28, 2007).

Plaintiffs conducted extensive investigation and discovery prior to mediation. *See* discussion *supra* Part II.C. Class Counsel obtained documents and information from Defendants sufficient to realistically assess Plaintiffs' and the Class's claims, and proceed with class certification. Boxer Decl. ¶¶ 7-10; *see also* discussion *supra* Part II.C. Class Counsel analyzed and evaluated Defendants' policy and procedure documents, time and payroll records, information from relevant witnesses, as well as conducting an independent investigation as described above. Boxer Decl. ¶¶ 7-11; *see also* discussion *supra* Part II.C. Based on the information and record developed through extensive investigation and discovery, Class Counsel was able to act intelligently and effectively in negotiating the proposed Supplemental Settlement. Boxer Decl. ¶¶ 7-11, 14-24; *see also* discussion *supra* Part II.C.

Additionally, Class Counsel was able to adequately represent the class in negotiating the Supplemental Settlement as a result of Class Counsel's experience in handling similar class actions. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378. Class Counsel has handled multiple wage-and-hour class-action lawsuits in both state and federal courts. *See* Boxer Decl. ¶¶ 25-38. Through their investigation, review of discovery materials, litigation, and the mediation, Class Counsel had an intimate understanding of the instant litigation and believes the Settlement is fair, adequate, and reasonable. *See id.* ¶¶ 18-19.

### 2.    The Settlement Was Negotiated at Arm's Length.

An initial presumption of fairness exists where, as here, "the settlement is recommended by class counsel after arm's length bargaining." *Harris*, 2011 WL 1627973, at *8 (internal citation omitted). The use of an experienced mediator supports a finding that settlement negotiations were both informed and non-collusive. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007); *Deaver v. Compass Bank*, Case No. 13-cv-00222-JSC, 2015 WL 4999953, *7 (N.D. Cal. Aug. 21, 2015).

MOTION FOR FINAL APPROVAL
CASE NO. 5:20-cv-02027-BLF

The Settlement was reached after extensive negotiations. In reaching the original Settlement, the Parties attended a full-day private mediation with experienced wage-and-hour mediator Lisa Klerman on November 15, 2021. Boxer Decl. ¶ 12. The Parties did not reach a resolution of the Action at that time, but thereafter continued to engage in settlement discussions with the assistance of Ms. Klerman. *Id.* The Parties went into the mediation willing to explore the potential for a settlement, but were prepared to litigate their positions through class certification, trial, and appeal if a settlement had not been reached. *Id.* Indeed, the Parties had walked away from the negotiating table at 3:00 a.m., and only reached a settlement on or around November 24, 2021 after subsequent extensive discussions with Ms. Klerman. *Id.* Plaintiffs and Class Counsel were able to make informed decisions in the further negotiations of the Supplemental Settlement based on this experience. *See id.* ¶ 18-24.

Moreover, Plaintiffs and Class counsel were able to make an informed decision regarding the Supplemental Settlement based on litigating the case through to the original Settlement, as Plaintiffs conducted significant discovery and investigation prior to the resolution, including propounding and responding to multiple sets of written discovery, reviewing over ten thousand pages of documents, interviewing Class Members, defending Plaintiffs' depositions, and taking the deposition of Defendants' corporate designee. *Id.* ¶¶ 7-9. Prior to mediation, Plaintiffs and their retained experts also prepared a damages model based on information and data obtained from Defendants and Class Members. *Id.* ¶ 11. Based on the information and record developed through extensive investigation and discovery, Class Counsel was able to act intelligently and effectively in negotiating the proposed Supplemental Settlement. *Id.* ¶¶ 7-11, 14-24.

These circumstances show that the settlement negotiations were at arm's length and, although conducted in a professional manner, were in fact adversarial. Accordingly, this criteria supports granting final approval of this Settlement.

### 3. The Relief Provided to the Class Is Adequate.

The third factor considers whether the relief provided to the class is adequate, taking into

16

account: "(i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[6]

Under the terms of the Supplemental Settlement, Defendants will pay $3,829,149.10 to resolve the Action as to the Omitted Class Members. This is a substantial recovery, which takes into consideration the risks of omitting the class members and proceeding with litigation, and ensures that those Omitted Class Members receive the same gross per-workweek distribution, at the same blended rate, as the original Settlement Class Members. Further, by adjusting the percentage of the class allocation attributed to wages, the Parties were able to make sure that the Omitted Class Members were not exposed to increased tax exposure as a result of their omission from the initial Settlement. Moreover, in assessing the adequacy of the Supplemental Settlement, Class Counsel ensured that the Omitted Class Members received the same gross per-workweek distribution as they would have received had they not been omitted from the initial Settlement. Boxer Decl. ¶ 23; Salinas Decl. ¶ 15; Addendum ¶ 5.6.1. The average Supplemental Individual Settlement Payment to be paid is approximately **$6,130.99**, while the highest distribution is estimated to be **$9,380.18** and the lowest **$25.93**. Salinas Decl. ¶ 15.

### a.  Costs, Risks and Delay of Further Litigation

In reaching a decision to settle this case, Class Counsel considered the risks of proceeding with the litigation. These risks include: (i) the burdens of proof necessary to establish liability, (ii) the merits of the defenses raised by Defendant, (iii) the difficulties in establishing damages, (iv) the likelihood of success at trial, and (v) the probability of appeal in the event of a favorable judgment. Boxer Decl. ¶¶ 14-19.

---

[6] There are no separate agreements the Court needs to consider to approve the proposed Supplemental Settlement.

MOTION FOR FINAL APPROVAL
CASE NO. 5:20-cv-02027-BLF

Continued litigation would be expensive, involving a lengthy trial, and would substantially delay and reduce any recovery by the Omitted Class Members. *Id*. While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists as to each cause of action. *Id*. Plaintiffs also recognize that, given the nature and scope of the claims, establishing liability and proving the amount of wages due to each Omitted Class Member would be an expensive, time-consuming, and uncertain proposition. *Id*. In the event Plaintiffs obtained a favorable judgment, an appeal was likely. *Id*. In contrast, because of the Settlement, Omitted Class Members will timely receive relief and avoid the risk of an unfavorable judgment. The fact that the Settlement will eliminate delay and further expense weighs strongly in favor of approval. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Where, as here, the parties face significant uncertainty, the attendant risks also favor settlement. *Hanlon*, 150 F.3d at 1026.

### b.    The Effectiveness of the Proposed Method of Distributing Relief to the Class

The Addendum provides a straightforward process for distributing the Supplemental Net Settlement Amount to Omitted Class Members in the same manner previously approved by this Court. Omitted Class Members are not required to submit a claim form to receive a share of the Supplemental Net Settlement Amount; rather, all Omitted Class Members who do not opt out will automatically receive a payment.[7] Supplemental Individual Settlement Payments will be distributed on a pro rata basis based on the number of Weeks Worked. Addendum ¶ 5.6.1.

Settlement checks will be negotiable for 180 calendar days from the date of mailing. Addendum ¶ 5.9.2. After 180 days, the Settlement Administrator will distribute the value of any uncashed checks to the State Controller's Office Unclaimed Property Fund in the name of the Omitted Class Member, which will allow Omitted Class Members to collect their respective

---

[7] Omitted Class Members who opt out will still receive their respective share of the PAGA portion.  Addendum ¶ 5.6.1.

Payment at any time in the future. *Id*. Thus, the proposed method of distribution "equitably and effectively distribute[s] relief to the Class." *See Zamora Jordan v. Nationstar Mortg., LLC*, NO. 2:14-CV-0175-TOR, 2019 WL 1966112, *4 (E.D. Wash. May 2, 2019).

### c.    The Terms of the Proposed Award of Attorneys' Fees

Pursuant to the Addendum, Class Counsel may seek an award of attorneys' fees in an amount not to exceed twenty-eight percent (28%) of the Supplemental Gross Settlement Amount, or $1,072,161.75. Addendum ¶ 7.4. This amount is the same percentage that the Court previously awarded. *See* Dkt. No. 83.

To calculate the fee in a common-fund case, the district court "has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). Class Counsel's request is reasonable under both the lodestar method, based on the time reasonably spent prosecuting the entire Action, and the common fund method.

The requested fee is consistent with fee awards provided under the common-fund doctrine in the Ninth Circuit. A recent district court decision in a wage-and-hour class action like this one noted that, "[w]ith respect to the percentage method, case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small." *Espinosa v. Cal. Coll. of San Diego, Inc*., 2018 WL 1705955, at *9-10 (S.D. Cal. April 9, 2018), citing Rubenstein, Conte and Newberg, *Newberg on Class Actions* § 15:83. The court further noted that, "California cases in which the common fund is small tend to award attorneys' fees above the 25% benchmark." *Id*. at *9 (citing *Craft v. Cnty. of San Bernardino,* 624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008)) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark).

//

//

//

The requested fees[8] are also reasonable based on the lodestar method. Under the lodestar method, the court considers a compilation of the time spent and a reasonable hourly compensation of each attorney to evaluate the reasonableness of the fee requested. *Ramos v. Countrywide Home Loans, Inc*., 82 Cal. App. 4th 615, 622 (2000). The moving party meets its burden in this regard by submitting "declarations evidencing the reasonable hourly rate for their services and establishing the number of hours spent working on the case" as "California case law permits fee awards in the absence of detailed time sheets." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254-55 (2001); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1810 (1996); *Nightengale v. Hyundai Motors Am.*, 31 Cal. App. 4th 99, 103 (1994). The hours spent and the reasonable hourly compensation are computed to arrive at a "lodestar" figure which may then be augmented or diminished by the court taking into account various "multiplier" factors. *See Ramos*, 82 Cal. App. 4th at 622 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977)).

Here, Plaintiffs' counsel's total lodestar for this action is $614,761, based on approximately 900.40 hours of attorney, paralegal, and law clerk time, at customary rates. Boxer Decl. ¶ 41 & Ex. 2. This is comprised of the $520,546 lodestar (based on 787.6 hours of time) that the Court reviewed in the initial Settlement, and a $94,215 lodestar based on approximately 112.8 hours of time spent on this case after the discovery of the Omitted Class Members. *Id.* Class Counsel is not seeking any additional costs. As Class Counsel is requesting attorneys' fees in the amount of $1,072,161.75 in the Supplemental Settlement, Class Counsel is requesting 28% of the Gross Supplemental Settlement Amount, consistent with the amount awarded in the initial Settlement. *Id.* In total, the fee request for this entire action is 28% of the total common fund of both the Gross Settlement Amount and the Supplemental Gross

---

[8] The request for fees and costs is detailed further in Plaintiffs' separate Motion for Attorneys' Fees, filed concurrently with this Motion.

Settlement Amount. *Id.* Additionally, "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. Aug. 15, 1995).

Considering the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, and the terms of the proposed award of attorneys' fees, the relief provided to the class is adequate.

### 4.    The Supplemental Settlement Does Not Provide Preferential Treatment to Plaintiffs or Any Segment of the Class.

Under the fourth factor, the Court examines whether the proposed settlement provides preferential treatment to any class member. Here, the proposed Supplemental Settlement poses no risk of unequal treatment of any Omitted Class Member, as each Omitted Class Member's Supplemental Individual Settlement Payment will be calculated based upon his or her Weeks Worked. Addendum ¶¶ 1.4, 5.6.1. Furthermore, each Omitted Class Member will receive a distribution at the same blended per-workweek rate of $30.26 as original Settlement Class Members did in the initial disbursement.[9] *Id.*

Though this Supplemental Settlement required additional time and effort, the Supplemental Settlement provides for no additional Class Representative Service Awards. Addendum ¶ 5.3. Plaintiffs have already received their Service Award under the Court's July 29, 2022 Final Approval Order. Accordingly, there is no preferential treatment to Plaintiffs.

---

[9] As described further herein, the Parties agreed to different per-workweek amounts for PAGA and class workweeks in order to address concerns about the percentage of the Supplemental Settlement allocated to the PAGA claim. However, the total blended rate of $30.26 remains the same. To address any tax liability differences between Omitted Class Members and the Settlement Class Members, the Parties agreed to allocate 19.3% to wages, as opposed to 20%. Addendum, ¶ 5.9.

5.    **Class Members' Reaction to the Proposed Supplemental Settlement.**

In assessing the fairness, adequacy, and reasonableness of the Settlement, courts also consider the reaction of the class. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29.

This factor also favors final approval. To date, zero Omitted Class Members have objected to the Settlement. Salinas Decl. ¶ 13. Additionally, no Omitted Class Members have requested exclusion from the Settlement. *Id.* ¶ 12. Given the overall positive reaction from Omitted Class Members, final approval of the Settlement is appropriate.

C.    **The Proposed PAGA Allocation Is Fair and Reasonable**

The amount allocated for PAGA penalties proposed in the Supplemental Settlement is fair and reasonable. As a preliminary matter, courts have discretion to greatly reduce the amount awarded under PAGA. Cal. Lab. Code § 2699(2) (West 2023); *Thurgood v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1135 (2012). This is particularly true where a plaintiff alleges both class claims and a representative action for civil penalties. *Visceral v. Mistral Grp., Inc.*, Case No. 15-cv-02198-EMC, 2016 WL 5907869, *9 (N.D. Cal. Oct. 11, 2016). PAGA was initiated to ensure compliance with the Labor Code in light of the government's limited enforcement resources. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 379 (2014). Where, as here, the Parties reach a substantial settlement providing employees with monetary compensation for underlying Labor Code violations, many of PAGA's underlying policy objectives are satisfied. Accordingly, there exists a substantial likelihood that the Court would exercise its discretion and reduce the amount awarded for PAGA penalties even if Plaintiffs proved successful at trial. Additionally, PAGA's shorter statute of limitations justifies a limited allocation when compared to the amount allocated for Labor Code violations.

//

MOTION FOR FINAL APPROVAL
CASE NO. 5:20-cv-02027-BLF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, PAGA provides that "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017). The Court of Appeal in *Moniz v. Adecco USA, Inc.* recently defined the standard of review for PAGA settlements, finding that the trial court must consider whether the settlement is "fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." 2021 WL 5578298, at *9 (Cal. Ct. App. Nov. 30, 2021); *see also O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (adopting guidance from the LWDA providing that "when a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public").

A PAGA representative action is "not akin to a class action;" it "is a species of *qui tam* action." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.,* 253 F. Supp. 3d 1074, 1076 (C.D. Cal. 2017). "The state's interest in such an action is to enforce its laws, not to recover damages on behalf of a particular individual." *Huff v. Securitas Sec. Servs., USA, Inc.*, 23 Cal. App. 5th 745, 760 (2018). Instead of focusing on fair recovery for individual claims, the goal of PAGA enforcement is to achieve "maximum compliance with state labor laws." *Id.* at 756; *see also Iskanian*, 59 Cal. 4th at 383 (noting that the goal of PAGA is to impose civil penalties for Labor Code violations "significant enough to deter violations"); *McKenzie v. Fed. Express Corp.*, 765 F. Supp. 2d 1222, 1233 (C.D. Cal. 2011) ("Unlike a class action seeking damages . . . for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies.").

In the present case, the allocation of $250,977.42 to PAGA claims in the Supplemental Settlement, while lower than the initial Settlement, sufficiently penalizes Defendants for the

alleged wage-and-hour violations and provides genuine and meaningful relief—$188,233.06 to the State and $62,744.35 to the Aggrieved Employees—thus fulfilling the underlying purpose of PAGA to benefit the public. *See, e.g.*, *Echavez v. Abercrombie & Fitch Co.*, No. CV 11-09754-GAF, 2017 WL 3669607, at *3 (C.D. Cal. Mar. 23, 2017) ("The primary purpose of PAGA, i.e., the empowerment of aggrieved employees to act as private attorneys general to collect civil penalties from their employers for Labor Code violations, [was] served by the proposed PAGA penalty in the parties' settlement agreement," where $340,000 of $700,000 settlement was allocated to PAGA penalties which were divided 75% to the LWDA and 25% to an estimated 10,000 aggrieved employees); *Jordan v. NCI Grp., Inc.*, No. EDCV161701JVSSPX, 2018 WL 1409590, at *3 (C.D. Cal. Jan. 5, 2018) ("The proposed settlement imposes a substantial penalty payment of $150,000, paid in exchange for a release of only those claims pled in the notice to the LWDA and the Complaint. This penalty has a substantial deterrent effect on NCI and other California employers. Furthermore, the proposed settlement encourages compliance with the specific requirements of the Labor Code, which has the effect of protecting workers from unlawful employment practices and working conditions.").

Additionally, the PAGA allocation is within the range approved by courts in California, at 6.5% of the Supplemental Gross Settlement Amount, and therefore should be approved. *See Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961, *9 (C.D. Cal. June 17, 2019) (finding that settlement of claims for PAGA penalties representing 1.25 percent of gross settlement amount was reasonable, as it "falls within the zero to two percent range for PAGA claims approved by courts."); *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of two percent); *Hopson v. Hanesbrands, Inc.*, 2008 WL 3385452, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 0.3 percent). This is also a reduction from the 8% allocation approved in the original Settlement, a reduction reached through the extensive negotiations between the Parties and their counsel and based on guidance from the

//

Court. Accordingly, the PAGA allocation is fair and reasonable and should be approved here as well.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Supplemental Settlement.

DATED: June 29, 2023                          **MATERN LAW GROUP, PC**


                                     By:    /s/Sara B. Tosdal
                                            MATTHEW J. MATERN
                                            JOSHUA D. BOXER
                                            SARA B. TOSDAL
                                            Attorneys for Plaintiffs Julie Samora and
                                            Tiana Beard, individually and on behalf of
                                            others similarly situated

MOTION FOR FINAL APPROVAL
CASE NO. 5:20-cv-02027-BLF